October 26, 2011

**VIA HAND DELIVERY**

Honorable Jeffrey T. Gilbert
U.S. District Court
Northern District of Illinois
Eastern Division
Everett McKinley Dirksen U.S. Courthouse
219 South Dearborn Street
Chicago, IL 60604

Jenner & Block LLP
919 Third Avenue
37th Floor
New York, NY 10022
Tel 212-891-1600
www.jenner.com

Chicago
New York
Washington, DC

Andrew H. Bart
Tel. 212-891-1645
Fax. 212-891-1699
abart@jenner.com

  Re: *Francescatti v. Germanotta, et al.*, Case No. 11 Civ. 5270

Dear Judge Gilbert:

  I represent defendant UMG Recordings, Inc. ("UMG") (incorrectly sued herein as Interscope Records and Universal Music Group, Inc.) in the above captioned action, and write on behalf of all defendants in response to the Court's order dated October 18, 2011 permitting the defendants to submit a letter brief in support of their request to bifurcate discovery into separate liability and damages phases.

  Bifurcation can be an effective tool to expedite and economize proceedings. This is particularly true in copyright infringement actions, where issues of liability and damages are often entirely distinct and involve different parties. Bifurcation is particularly appropriate in the present case because the case for liability appears meritless, and the costs and burdens of damages discovery are very high. As a result, the defendants request that the Court phase the discovery schedule in this matter so that defendants will have an opportunity to make a dispositive motion on liability issues before the parties have to incur the expense and burden of damages discovery.

  This action arises from Plaintiff's allegation that she wrote a musical composition by the name of "Juda." Defendant Germanotta, professionally known as "Lady Gaga" ("Germanotta") is a celebrated songwriter and performer, whose most recent album—*Born This* Way—includes a song titled "Judas." The Plaintiff alleges that Germanotta unlawfully copied the composition "Juda" when composing the song "Judas."

  In order to hold defendants liable on her claim of infringement, the Plaintiff must first demonstrate that she owns the copyright in the composition "Juda" and that actionable copying has occurred. In order to prove copying, Plaintiff will have to demonstrate that Germanotta had access to Plaintiff's work, that the allegedly infringing material is original to the Plaintiff and that there are actionable similarities between the two works. But even at this early stage of the litigation, it appears that Plaintiff's theory of access fails. Plaintiff's theory that Defendant Germanotta had access to "Juda" directly through Defendant Gaynor ("Gaynor"), or indirectly from Gaynor through Paul Blair ("Blair") or Brian Lee ("Lee") -- members of Defendant DJ White Shadow, LLC ("DJWS") -- is contradicted by a demonstrable time line of events which shows that: (a) Germanotta has never had any direct contact with Gaynor; (b) Germanotta's

Honorable Jeffrey T. Gilbert
October 26, 2011
Page 2

"Judas" was written, composed and recorded in May 2010 in Europe; and (c) Germanotta did not meet with Blair or Lee until August 2010. Moreover, a comprehensive musicological analysis of the two songs at issue revealed no substantial (much less striking) similarity and no evidence of copying. According to Dr. Lawrence Ferrara, Full Professor of Music and Director Emeritus of all studies in Music and the Performing Arts in The Steinhardt School at New York University[1], Plaintiff's song and Defendant's song do not share any unique or significant structural, harmonic, rhythmic, melodic, or lyrical similarities, individually or in the aggregate, and there are no musicological grounds to support any claim that the creators of Defendant's song copied any musical or lyrical expression from Plaintiff's song. Dr. Ferrara also analyzed an August 12, 2011 letter and attachments from Plaintiff's counsel, which purport to identify similarities between the two songs. Dr. Ferrara concluded that this document failed to provide any musicological support for a claim that Defendant's song copied any musical or lyrical expression from Plaintiff's song.

Assuming that, notwithstanding the foregoing, Plaintiff wishes to test the evidence on the liability issues (access and similarity), the relevant proof will primarily be in the hands of the Plaintiff as well as the individual defendants and non-parties. On the issue of access, depositions of the Plaintiff as well as each of the individual defendants will be required, as well as depositions of non-party witnesses with knowledge of the creative process for Plaintiff's and Ms. Germanotta's works. With regard to the issue of actionable similarity, expert analysis and testimony from musicologists will necessarily be presented by all of the parties and there will be discovery of those experts. Both access and similarity issues are completely distinct from damages issues.

Damages discovery concerns entirely different factual issues than those addressed in determining liability These issues include, but are not limited to: (i) information on each of the Defendants' gross revenue from the exploitation of "Judas"; (ii) information related to each of the Defendants' deductible costs associated with its exploitation; and (iii) a determination as to what percentage of each of the Defendants' profits, if any, earned from these exploitations is

---

[1] Dr. Ferrara has testified in numerous legal disputes and been an active music copyright consultant for major record, music publishing and motion picture companies, as well as numerous independent companies. He has also been recognized by a number of federal courts as a top expert in musicological analysis. *See, e.g., Batts et al. v. Adams*, CV 10-8123 (JFW) (RZx), denying preliminary injunction (C.D.Cal. February 8, 2011) ("the Court found that Dr. Ferrara's declaration fully complied with the methodology identified by the Ninth Circuit and that he reliability and persuasively applied that methodology to the facts…Dr. Ferrara's detailed report, especially the visual exhibits, [were] extremely helpful to the Court in applying the extrinsic test for substantial similarity"); *Tisi v. Patrick,* 97 F. Supp. 2d 539, 543 (S.D.N.Y. 2000) (court noting that Dr. Ferrara is a recognized musicologist, that "[his] conclusions were sounder and more credible [than the plaintiff's musicologist]," and "[t]hanks to the skill of counsel and the clarity of the Defendants' expert witness, the unfamiliarity of the court with the genre has been overcome"); *Velez v. Sony Discos,* 2007 U.S. Dist. LEXIS 5495 (S.D.N.Y. Jan. 16, 2007) (court noting that Dr. Ferrara was "eminently qualified by his knowledge, skill, experience, training, and education to render expert opinions on the musicological similarities and differences between [the respective works at issue]").

Honorable Jeffrey T. Gilbert
October 26, 2011
Page 3

attributable to the allegedly infringing material. Damages discovery is time consuming and complex.

As one example of the complexity of damages issues, once the parties have arrived at a number that represents the defendants' profits from the sale of the album *Born This Way*, the parties must then allocate a portion of these profits to the song "Judas," which is only one of fourteen songs on the album. Once profits related to "Judas" have been determined, the parties must then attempt to determine what portion of those profits is attributable to the portions of the compositions alleged to be infringing as opposed to the portions that are concededly original. Finally, the parties must then attempt to determine what portion of the remaining profits is attributable to things other than the allegedly infringing material, such as, *inter alia*, Ms. Germanotta's unique and acclaimed vocal performances, the success of other tracks on the album, the portions of the composition that are not claimed to be infringing, and the marketing expertise provided by UMG to exploit the album. Each side will almost certainly retain multiple experts, who will create reports, testify at depositions, and prepare for trial. The process of damages discovery is always time consuming and results in large expenditures of both attorney and expert fees.

Moreover,—in contrast to liability discovery—the burden and expense of such discovery will be borne primarily by UMG. UMG is not an author of the composition "Judas." Nor is it involved in the chain of access alleged by Plaintiff. Rather, UMG manufactures, distributes, and sells copies of the album *Born This Way* and the single "Judas." As a result, UMG's role in this lawsuit does not become significant unless and until the Plaintiff has proven liability.

**Bifurcation is Appropriate For Purposes of Convenience, to Avoid Prejudice, and to Economize the Proceedings**

Rule 42(b) of the Federal Rules of Civil Procedure provides that a court may order a separate trial of any issue in the interests of convenience, judicial expedition and economy, or to avoid prejudice. *See* Fed. R. Civ. P. 42(b). This power applies equally to the court's power to bifurcate discovery. As courts have frequently noted, "[o]ne of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." *Ellington v. Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9the Cir. 1970), *cert denied*, 400 U.S. 957 (1970). When damages issues are complex, courts have deferred damages discovery until after the plaintiff has established liability. *Molinaro v. Lafayette Radio Elecs.*, 62 F.R.D. 464, 466 (E.D. Pa. 1973); *Smith v. Alyeska Pipeline Serv. Co.*, 538 F.Supp. 977, 983-84 (D.Del. 1982); *see also Priority Records v. Bridgeport Music*, 907 F.Supp. 725, 734 (S.D.N.Y. 1995).

Given the foregoing, it is unsurprising that intellectual property matters, such as copyright infringement actions, are frequently bifurcated. *See Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.,* 2004 U.S. Dist. LEXIS 4698, at *6-7 (N.D. Ill. Mar. 23, 2004); *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 935 (7th Cir. 1989); *Selle v. Gibb*, 741 F.2d 896, 898 (7th Cir. 1984); *Amsted Indus. V. National Castings*, No. 88C924, 1990 U.S. Dist. LEXIS 8553, 16 U.S.P.Q.2d (N.D. Ill. July 9, 1990); *Damiano v. Sony Music Entm't*, 168 F.R.D. 485, 493

Honorable Jeffrey T. Gilbert
October 26, 2011
Page 4


(D.N.J. 1996); *Ryan v. Carl Corp.*, No. C97-3873 (FMS), 1999 U.S. Dist. LEXIS 366 at *34 (N.D. Cal. Jan. 12, 1999); *Apple Computer v. Microsoft Corp.*, 821 F.Supp. 616, 630 (N.D. Cal. 1993), *aff'd in part, rev'd in part on other gds.*, 35 F.3d 1435 (9th Cir. 1994); *CBS, Inc. v. Garrod*, 622 F.Supp. 532, 533 (M.D. Fla. 1995). Even more so than many cases, intellectual property matters concern factually distinct issues of liability and damages, making these cases prime candidates for bifurcation. *Damiano*, 168 F.R.D. at 493; *Ocean Atl. Woodland Corp.*, 2004 U.S. Dist LEXIS 4698, at *6-7.

### Issues of Judicial Economy and Convenience Strongly Favor Bifurcation

One key purpose of bifurcation is to avoid forcing a court and the parties to spend time engaging in discovery on complex, but ultimately irrelevant, issues. As a result, courts bifurcate issues of liability and damages to promote judicial economy by postponing discovery until a liability determination makes such an inquiry necessary in situations where the separate inquiry into damages and liability does not cause a duplication of effort. *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, 2004 U.S. Dist. LEXIS 4698, at *6-7 (N.D. Ill. Mar. 23, 2004) (ordering discovery bifurcation where the "evidence necessary to establish liability will nominally, if at all, overlap with evidence relating to damages and therefore the risk of duplication and delay is minimal"); *Amsted Indus.*, 1990 U.S. Dist. LEXIS 8553 at *3-7; *Apple Computer*, 821 F.Supp. at 630; *Alyesak Pipeline Service Co.*, 538 F.Supp. at 983-84; *Swofford v. B&W Inc.*, 336 F.2d 406, 415 (5th Cir. 1964); *Cataphote Photo Corp. v. DeSoto Chem. Coatings, Inc.*, 235 F.Supp. 931, 934 (N.D. Cal. 1964); *Kimberly-Clark Corp. v. James River Corp.*, 131 F.R.D. 607, 609 (N.D. Ga. 1989). In this case, bifurcation will promote judicial economy without causing any duplication of effort for the Court or the parties.

Copyright cases often involve complicated issues of accounting for gross revenues, costs, and profits, *see Damiano*, 168 F.R.D at 493, but these issue only take on significance after a liability determination. If Defendants are successful on their dispositive motion regarding liability, then all of the cost and time necessary to engage in damages discovery will be unnecessary. *See Ocean Atl. Woodland Corp.*, 2004 U.S. Dist. LEXIS 4698, at *6-7 ("[b]ecause…the distinct possibility exists that the issue of damages will never be reached, bifurcating discovery as to liability from that of damages will serve the goals of convenience, expedition and economy"). Those costs are particularly high in a case such as this, where the material alleged to be similar is only a small subset of the work at issue and where the work at issue is just one song from a highly successful album. Accordingly, damages issues are not merely the calculation of revenues, costs, and profits with respect to that album, but also involve several layers of apportionment.

Significantly, pursuing a liability determination separately from damages discovery will not result in the duplication of any effort. As noted above, the issues present in determining whether the song "Judas" infringes on the composition "Juda" are entirely distinct from the damages that would be due if such infringement occurred.

Honorable Jeffrey T. Gilbert
October 26, 2011
Page 5

**Bifurcation Will Not Prejudice the Plaintiff**

  While the failure to bifurcate this case will certainly prejudice the defendants by forcing them to engage in costly and potentially unnecessary discovery, bifurcation will have no prejudicial impact on the Plaintiff. Indeed, defendants are willing to agree to bifurcation on all damages issues in the case, including any potential counterclaims. Bifurcation will allow the Plaintiff to adjudicate the dispositive issue of liability as soon as possible. To the extent the Plaintiff loses on liability, she will have saved the significant expenses associated with damages discovery. In contrast, if the Plaintiff were to prevail on her infringement claim, a determination of liability may prompt settlement negotiations and avoid the need for protracted damages discovery. Furthermore, any possible delay in the resolution of the Plaintiff's entire claim is minimal and is vastly outweighed by the benefits of bifurcation.

  For the foregoing reasons, the defendants respectfully request that the Court bifurcate discovery in this action into liability and damages phases, with the damages phase contingent on a finding of liability in favor of the Plaintiff.

             Respectfully submitted,

             /s Andrew H. Bart_____