# NIRO, HALLER & NIRO

RAYMOND P. NIRO
TIMOTHY J. HALLER
WILLIAM L. NIRO
JOSEPH N. HOSTENY, III
ROBERT A. VITALE, JR.
PAUL K. VICKREY
DEAN D. NIRO
RAYMOND P. NIRO, JR.
PATRICK F. SOLON
ARTHUR A. GASEY
CHRISTOPHER J. LEE
DAVID J. SHEIKH
VASILIOS D. DOSSAS
RICHARD B. MEGLEY, JR.
MATTHEW G. McANDREWS
PAUL C. GIBBONS

181 WEST MADISON STREET-SUITE 4600

CHICAGO, ILLINOIS 60602

TELEPHONE (312) 236-0733

FACSIMILE (312) 236-3137

November 1, 2011

GREGORY P. CASIMER
DINA M. HAYES
FREDERICK C. LANEY
DAVID J. MAHALEK
KARA L. SZPONDOWSKI
ROBERT A. CONLEY
LAURA A. KENNEALLY
TAHITI ARSULOWICZ
BRIAN E. HAAN
JOSEPH A. CULIG
ANNA B. FOLGERS
CHRISTOPHER W. NIRO
DANIEL R. FERRI
GABRIEL I. OPATKEN
OLIVER D. YANG

OF COUNSEL:
JOHN C. JANKA

*By Hand Delivery*
The Honorable Jeffrey T. Gilbert
United States District Court
219 South Dearborn Street
Room 1366 (Chambers)
Chicago, IL 60604

    Re:   *Rebecca Francescatti v. Stefani Germanotta, et al*
           Case No. 11-cv-05270

Dear Judge Gilbert:

On behalf of the Plaintiff, Rebecca Francescatti, counsel submits a letter brief in opposition to Defendants' request to bifurcate discovery into separate liability and damages phases. Although no rule is cited by Defendants for their request, Plaintiff believes the request is made to sequence discovery under Rule 26(d), not bifurcate under Rule 42(b).

Defendants' request to bifurcate discovery in this matter is unreasonably restrictive, and unnecessarily burdens the Plaintiff and the Court. Bifurcation of trial, which, in certain cases, can expedite and economize proceedings, is considered to be "the exception rather than the rule." *Orlowski v. Erikson*, 2009 U.S. Dist. LEXIS 66893, at *19 (N.D. Ill. July 31, 2009) (quoting *Pfizer, Inc. v Novopharm, Ltd.*, 570 U.S.P.Q. 2d 1442, 1443 (N.D. Ill 2000).); *Tafari v. Goord*, 2011 U.S. Dist. LEXIS 118871 at *4 (WD N.Y., Oct 14, 2011). The moving party bears the burden of demonstrating judicial economy would be served and that no party would be prejudiced by the bifurcation. In this instance, Defendants have not met that burden. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C). Here, reasonable limits on discovery would be preferable to complete separation of liability and damages.

In order to limit the sequence, frequency or extent of discovery, Rule 26(b)(2)(C)(iii) requires the Court to employ a balancing test considering the burden or expense in proportion to the likely benefit, the amount in controversy, the parties' resources, the importance of the issues at stake and the importance of the proposed discovery in resolving the issues in order to assure a "just, speedy and inexpensive" determination of all matters. (Rule 1, Fed.R.Civ.P.).

The Honorable Jeffrey T. Gilbert
October 31, 2011
Page 2

The Seventh Circuit has established the principle of Discovery Proportionality for ESI (Electronically Stored Information) (7th Cir. Principle 1-03) to provide:

> The proportionality standard set forth in Fed.R.Civ.P. 26(b)(2)(C) should be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear and specific as practicable.

*See, The Sedona Conference Commentary on Proportionality in Electronic Discovery*, 11 Sedona Conf. J. 289, 294 (2010). If courts and litigants approach discovery with the mindset of proportionality, there is the potential for real savings in both dollars and time to resolution." John L. Carroll, *Proportionality in Discovery: A Cautionary Tale*, 32 Campbell L.Rev. 455, 460 (2010). That principle of proportionality applies here.

Plaintiff thoroughly investigated the facts and determined that it had sufficient evidence to state a *prima facie* case of copyright infringement against Defendants. Defendants, as expected, offer blanket denials of the facts and claims, including a denial of substantial similarity by a retained expert. Defendants then use as their basis to separate liability from damages discovery that "liability appears meritless, and the costs and burdens of discovery are very high." (Defendants' Joint Letter Brief at p. 1). Interestingly, although Plaintiff willingly provided Defendants, Stefani Germanotta ("Germanotta") and Universal Music Group, Inc. ("UMG"), with documentary expert evidence of substantial similarity between the two works, and an expanded description of the basis for her claims, Defendants have not provided Dr. Ferrara's report or any other evidence to Plaintiff to the contrary. Defendants seem to now prefer formal discovery on the liability issues – a process they claim must be long and extensive. What we do not know is how long, how extensive or how much is reasonably necessary, given the issues and amount in controversy. Plaintiff is prejudiced by long, extensive and bifurcated discovery. Defendants appear to believe that it is more efficient for Plaintiff to prove liability (in a year or two) and then start damage discovery. That delay alone prejudices Plaintiff and denies the Court any basis to determine the proper scope of discovery as the case proceeds. By cutting off all damages discovery, Defendants are denying the Plaintiff and the Court valuable information that factors into the discovery mandate of proportionality.

Defendants' claim that profits are the proper measure of damages is without basis in fact and industry standards. Gross revenue is the basis for Plaintiff's claims, not net profit. Music used in sound recordings, and distributed in CD's, audio cassettes or digital downloads, is permitted by what is known as a mechanical license which generates mechanical royalties. Music that is publically performed, for example on TV and radio, is permitted by a performance license which generates performance royalties. *See*, A.Kohn, *Kohn on Music Licensing*, 89 (3rd Ed. 2002) The royalty income paid is a simple calculation and, by industry standard, reported and paid quarterly. UMG knows how much revenue it receives and routinely accounts for and pays royalties for the sales to the songwriters on a quarterly basis.

The Honorable Jeffrey T. Gilbert
October 31, 2011
Page 3

The fact that financial discovery relates to damages does not mean it should be totally prohibited in the early stage of discovery. Basic financial information, readily available and easily produced, should be open to initial discovery. While the issues of detailed apportioning of expenses and allocations amongst <u>defendants</u> (how they share in the bounty) may be deferred, certainly the basic royalty payments and the contractual basis for the royalty payments can be easily produced by Defendants. Expert discovery (depositions and other secondary sources of revenue) could be delayed on some issues, but basic factual discovery on revenues should be produced in the initial stages of discovery.

UMG itself makes the case for non-bifurcation. It has only one economic function – sell copies of the Defendant's album and the single song "Judas." (*See* Defendants' Joint Letter Brief at p. 3). UMG surely has that information at its fingertips. UMG routinely accounts for statutory mechanical royalties to song writers on a quarterly basis. The performance societies (ASCAP/BMI) also routinely report performance royalties to the artist and writers.

The principal Defendant, Stefani Germanotta (or her accountant), surely knows the revenues she has received from the sale of her album and the song "Judas" as well as the ASCAP/BMI royalties. Production of that basic financial information should not be difficult or burdensome in any way.

If not barred by this Court, Plaintiff will seek limited, focused factual discovery from the parties to frame the issue of damages, which, in turn, will allow for the Court (and the parties) to properly determine the scope of discovery as the case proceeds. Limited, focused discovery on such matters as the number of albums sold, gross number of "Judas" songs sold, and gross revenues received by the parties will advise the parties and the Court what is at stake in the litigation. Defendant cannot possibly deny or assert that such information is not readily available to them and they suffer little, if any, burden in producing that information. Plaintiff, in turn, is willing to agree to defer the in-depth damages expert discovery.

The Court, if inclined to bifurcate damages discovery in this matter, should allow for a minimum of focused, clear and specific discovery on the issues which are relevant to damages (specifically units sold, gross revenues received, etc.). The mechanical royalties reported and paid by UMG is based on gross revenue, not net profit. The performance society royalties reported and paid by ASCAP/BMI are based on gross revenue, not net profit. There is simply no reasonable basis for Defendants to claim production of that financial information would unduly burden them in any way. While some discovery with respect to damages can be sequenced, the basic financial information readily available to Defendants should be included in early discovery.

The Honorable Jeffrey T. Gilbert
October 31, 2011
Page 4

      These financial facts and documents will allow the parties to deal with other issues in a manner proportionate to the needs of the parties and the Court and will ensure a just, speedy and inexpensive determination of the matter.

                                                    Sincerely,

                                                  William L. Niro

WLN/mm

cc:    Counsel of Record
       (Electronically through the Court's CM/ECF system)