# Exhibit 1

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**PRIORITY SEND**

### CIVIL MINUTES -- GENERAL

Case No.  **CV 10-8123-JFW (RZx)**                              Date:  October 21, 2011

Title:     Ebony Latrice Batts, et al. -v- William Adams, Jr., et al.

---

**PRESENT:**

**HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

**ATTORNEYS PRESENT FOR PLAINTIFFS:**          **ATTORNEYS PRESENT FOR DEFENDANTS:**
         None                                                                    None

**PROCEEDINGS (IN CHAMBERS):**     ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [filed 5/27/11; Docket No. 117]

     On May 27, 2011, Defendants William Adams, Allan Pineda, and Jaime Gomez, all individually and collectively as the music group The Black Eyed Peas; Jaime Munson a/k/a Poet Name Life; will.i.am music, llc; Tab Magnetic Publishing; Cherry River Music Co.; and Jeepney Music, Inc. ("Adams Defendants") filed a Motion for Summary Judgment ("Motion").  On June 6, 2011, Plaintiffs Ebony Latrice Batts a/k/a Phoenix Phenom and Manfred Mohr (collectively, "Plaintiffs") filed their Opposition, including a request for a continuance pursuant to Federal Rule of Civil Procedure ("Rule") 56(d).  On June 13, 2011, Defendants filed a Reply.  On June 20, 2011, the Court granted Plaintiffs' Rule 56(d) Request, and continued the hearing on the Adams' Defendants Motion from June 27, 2011, to September 26, 2011.  On September 6, 2011, Plaintiffs filed their Supplemental Opposition.  On September 16, 2011, the Adams Defendants filed a Supplemental Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's September 26, 2011 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

## I. Factual and Legal Background[1]

Plaintiffs wrote and recorded the song "Boom Dynamite," containing both music and vocals, in 2007. On April 10, 2009, a Certificate of Registration, No. SR0000625557, for "Boom Dynamite" was issued to Plaintiffs by the United States Copyright Office. Plaintiffs have never sold, transferred, or otherwise disposed of their statutory copyrights in "Boom Dynamite."

On or about March 30, 2009, the Black Eyed Peas, a musical group consisting of Defendants William Adams, Allan Pineda, Jaime Gomez, and Stacy Ferguson, wrote, recorded and released "Boom Boom Pow" as the first single from their album *The E.N.D. (Energy Never Dies)*. "Boom Boom Pow" is the Black Eyed Peas' second best selling song to date, it was iTunes' highest selling song of 2009, it was selected as Song of the Year for 2009 by *Billboard Magazine,* and "Boom Boom Pow" was nominated for a Grammy for Best Dance Recording. "Boom Boom Pow" has also been licensed and used in several nationwide commercials, television shows, the 2009 movie *G Force*, and a re-mixed version of the song was licensed for use in the 2009 movie *G.I. Joe: The Rise of Cobra*.

Plaintiffs first heard Defendants' song "Boom Boom Pow" in March 2009. On January 26, 2010, ten months after they first heard "Boom Boom Pow," Plaintiffs filed a Complaint in the United States District Court for the Northern District of Illinois, alleging that "Boom Boom Pow" infringed the copyright in their song "Boom Dynamite." On April 27, 2010, the District Court dismissed the action, and granted Plaintiffs nearly one month to re-file their Complaint in an appropriate forum. Plaintiffs decided not to re-file their Complaint, but, instead, approached the defendants about a potential settlement. After defense counsel concluded that settlement negotiations would not be productive and in an effort to end any further delay, defense counsel requested a final settlement demand. Plaintiffs' "final" demand letter was received on August 20, 2010, and it advised counsel that if the defendants did not agree to pay a certain amount of money within seven days, Plaintiffs would "proceed to file a lawsuit and seek a preliminary injunction." On August 27, 2010, defense counsel rejected Plaintiffs' settlement demand and invited Plaintiffs' counsel to contact him if he wanted to discuss the matter. Plaintiffs' counsel never contacted defense counsel and Plaintiffs never filed their threatened lawsuit until this action was filed on October 28, 2010. In their Complaint, Plaintiffs allege that the Black Eyed Peas, their record labels, and their publishers[2] committed willful copyright infringement of Plaintiffs' song "Boom Dynamite" when the Black Eyed Peas wrote and recorded "Boom Boom Pow."

---

[1] To the extent any of these facts are disputed, they are not material to the disposition of this motion. In addition, to the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections. As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

[2] The record labels and publishers include Defendants Jaime Munson a/k/a Poet Name Life; will.i.am music, llc; Tab Magnetic Publishing; Cherry River Music Co.; Jeepney Music, Inc.; Headphone Junkie Publishing, LLC; and EMI April Music Publishing, Inc.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *American International Group*, 926 F.2d at 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

## III. Discussion

### A. Standard for Demonstrating Copyright Infringement

To prove copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright[3], and (2) that a defendant copied constituent elements of the protected work that are original. *See, e.g., Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000). Because direct evidence of copying is rarely available

---

[3] While the Adams Defendants do not concede that Plaintiffs can demonstrate ownership of a valid copyright in the song "Boom Dynamite," they have not sought summary judgment on that ground. Thus, the Court will assume, for purposes of this Motion only, that Plaintiffs do own a valid copyright in "Boom Dynamite."

and copying can therefore be difficult to prove, a plaintiff "may establish copying by showing (1) circumstantial evidence of access to the protected work and (2) substantial similarity of 'ideas' and 'expression' between the copyrighted work and the allegedly infringing work." *Jason v. Fonda*, 526 F. Supp. 774, 776 (C.D. Cal. 1981), *aff'd*, 698 F.2d 966 (9th Cir. 1982); *see also Three Boys Music*, 212 F.3d at 481 ("Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had 'access' to the plaintiff's work and that the two works are 'substantially similar.'").

Even if the Court assumes that the Adams Defendants had access to Plaintiffs' "Boom Dynamite," to prove copying Plaintiffs must also demonstrate that the copyrighted work and the allegedly infringing work are substantially similar.[4] *See Three Boys Music*, 212 F.3d at 481. "'Substantial similarity' refers to similarity of expression, not merely similarity of ideas or concepts." *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1398 (9th Cir. 1997). Only protected expression is relevant for purposes of assessing substantial similarity. *See Shaw v. Lindheim*, 919 F.2d 1353, 1361 (9th Cir. 1990); *see also Smart Inventions, Inc. v. Allied Communications Corp.*, 94 F. Supp. 2d 1060, 1066 (C.D. Cal. 2000) ("It is an axiom of copyright law that ideas are not protected."). "[T]he party claiming infringement may place '*no* reliance upon any similarity in expression resulting from' unprotectable elements." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1446 (9th Cir. 1994) (quoting *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987)) (emphasis in original).

To determine whether two works are substantially similar, the Ninth Circuit employs a two-part analysis - an extrinsic and an intrinsic test.[5] "The 'extrinsic test' is an objective comparison of specific expressive elements" which "'focuses on articulable similarities'" between the two works. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (quoting *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994)). "The intrinsic test is a subjective test that focuses on whether the ordinary, reasonable audience would recognize the [Defendants'] work as a dramatization or picturization of the [P]laintiff's work." *Kouf*, 16 F.3d at 1045 (internal quotations omitted). "For summary judgment, only the extrinsic test is important." *Id.* "[A] plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests." *Id.*

---

[4] While the Adams Defendants dispute that they had access to Plaintiffs' "Boom Dynamite," the Adams Defendants are not moving for summary judgment based on lack of access. Therefore, for purposes of deciding this Motion only, the Court will assume that the Adams Defendants did have access to Plaintiffs' "Boom Dynamite."

[5] "[O]riginally . . . the extrinsic prong was a test of similarity of ideas based on external criteria; analytic dissection and expert testimony could be used, if helpful. The intrinsic prong was a test for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance. As it has evolved, however, the extrinsic test now objectively considers whether there are substantial similarities in *both* ideas and expression, whereas the intrinsic test continues to measure expression subjectively." *Apple Computer*, 35 F.3d at 1442. "Because the criteria incorporated into the extrinsic test encompasses all objective manifestations of creativity, the two tests are more sensibly described as objective and subjective analyses of expression, having strayed from *Krofft's* division between expression and ideas." *Shaw*, 919 F.2d at 1357.

The Court recognizes that summary judgment is not favored on questions of substantial similarity in copyright cases. *See e.g., Shaw*, 919 F.2d at 1355. Summary judgment is only appropriate if "no reasonable juror could find substantial similarity of ideas and expression, viewing the evidence in the light most favorable to the nonmoving party." *Kouf*, 16 F.3d at 1045; *see also Pasillas*, 927 F.2d at 442 ("Our circuit has expressed a certain disfavor for summary judgment on questions of substantial similarity, but it is nevertheless appropriate to grant summary judgment if, considering the evidence and drawing all inferences from it in the light most favorable to the nonmoving party, no reasonable jury could find that the works are substantially similar in idea and expression."). Although summary judgment is generally disfavored on the question of substantial similarity, "summary judgment is proper when the Court determines that the similarity between works is insubstantial as a matter of law." *Jason*, 526 F. Supp. at 777. Indeed, the Ninth Circuit has "frequently . . . affirmed summary judgment in favor of copyright defendants on the issue of substantial similarity." *Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989).

The Ninth Circuit has identified a methodology to assist the Court in applying the extrinsic test to the works at issue in a particular case. Initially, it is the plaintiff's burden to identify the sources of the alleged similarity between the two works. *See Apple Computer*, 35 F.3d at 1443; *see, also, Three Boys Music*, 212 F.3d at 485. Once the plaintiff has identified the alleged similarities, "[u]sing analytic dissection, and, if necessary, expert testimony, the court must determine whether any of the allegedly similar features are protected by copyright." *See Apple Computer*, 35 F.3d at 1443; *see also Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010) ("At the initial 'extrinsic' stage, we examine the similarities between the copyrighted and challenged works and then determine whether the similar elements are protectable or unprotectable"). The typical objective features to be compared vary depending on the type of works at issue. *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1177-78 (C.D. Cal. 2001); *see, also, Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004) (holding that "music is comprised of a large array of elements, some combination of which is protectable by copyright."). When analyzing the similarity of musical compositions under the extrinsic test, a variety of compositional elements may be considered, including melody, harmony, rhythm, timbre, structure, instrumentation, meter, tempo, and lyrics. *Swirsky*, 376 F.3d at 849.

However, in comparing these elements, the Court must first filter out any "unprotectable elements." *See, e.g., Apple Computer*, 35 F.3d at 1443; *see, also, Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 913-14 (9th Cir. 2010)*; Cavalier*, 297 F.3d at 822 ("when applying the extrinsic test, a court must filter out and disregard the non-protectable elements in making its substantial similarity determination."); *Swirsky*, 376 F.3d at 845 ("Because the requirement is one of substantial similarity to *protected* elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work") (emphasis in the original). Among the "unprotectable elements" which the court must "filter" out in its comparison of a copyrighted work and an allegedly infringing work are "'ideas,' as distinguished from the 'expression' of those ideas," and "other information over which no individual is entitled to claim a monopoly," including "elements borrowed from the public domain; instances in which a particular 'expression' at issue 'merges' with the 'idea' being expressed; and/or a similar instance in which the form of the 'expression' is so 'standard' in the treatment of a given 'idea' that it constitutes a *scenes a faire*, or a 'scene which must be done.'" *Idema*, 162 F. Supp. 2d at 1176-77 (internal citations omitted); *see, also, Intersong-USA v. CBS, Inc.*, 757 F.Supp. 274, 282 (S.D.N.Y. 1991) (dismissing claim where only alleged similarities were "found in many other well-known

songs," and, thus, constituted "unoriginal" and "unprotectable expression").

### B. Application of the Copyright Infringement Standard to this Case.

In this case, the Adams Defendants move for summary judgment on Plaintiffs' sole claim for relief for copyright infringement on the grounds that, as a matter of law, Plaintiffs cannot establish "Boom Boom Pow" is substantially similar to Plaintiffs' "Boom Dynamite." Plaintiffs argue that the works are substantially similar as demonstrated by the report of their expert musicologists, Dr. Alexander Stewart.[6] Plaintiffs argue that "Boom Boom Pow" and "Boom Dynamite" (1) have similar hooks; (2) both use the phrase "I got that" followed by the repeated use of the word "boom;" and (3) have similar secondary hooks. In addition, Plaintiffs argue that the two works share many similar non-protectable elements, including that: (1) both songs are in Phrygian mode; (2) both songs use a kick drum behind every spoken "boom" as a method of emphasizing the word; (3) both songs have nearly identical structures, including the peculiar repeated placement of the second half of the first verse prior to the final chorus; (4) both songs have a nearly identical drum pattern that is very simplistic and devoid of any cymbals; (5) both songs contain the same theme; and (6) both songs contain the same repeated motif of "I got that" followed by a short phrase or words in a nearly identical rhythm and metric placement in respective three eight note picks starting in the same place and leading to the downbeat on beat one. While Plaintiffs admit these "similarities are ideas, and thus by themselves not protectable expression," Plaintiffs argue that the combination of these non-protectable elements is protectable.

#### 1. The Allegedly Protectable Elements in "Boom Dynamite" Are Not Substantially Similar to the Elements in "Boom Boom Pow."

An examination of each of the three allegedly protectable elements reveals that there are substantial and significant differences between "Boom Boom Pow" and "Boom Dynamite." For example, Plaintiffs claim that both works have similar hooks and use the similar phrase "I got that" followed by the repeated use of the word "boom." However, in his deposition testimony, Dr. Stewart agreed with Dr. Ferrara that several differences exist, including that: (1) the autonomous phrase "I got that boom, boom, boom" is never iterated in "Boom Dynamite" but is iterated a total of three times in "Boom Boom Pow;" (2) the phrase "I got that boom boom boom boom boom" (with five "booms" instead of three) is iterated 10 times in "Boom Dynamite," but never in "Boom Boom Pow;" (3) the phrase "I got that boom boom boom boom boom" is heard in the chorus of "Boom Dynamite" while the phrase "I got that boom boom boom" is heard in the verse section of "Boom Boom Pow;" (4) the rhythmic duration of the three "boom" lyrics in "Boom Boom Pow" is different than the first three of five "boom" lyrics in "Boom Dynamite;" (5) the metric placement of the

---

[6] Plaintiffs also argue that, at a minimum, a genuine issue of material fact exists with respect to whether the works are substantially similar because of the conflicting expert reports of Dr. Stewart, and the Adams Defendants' expert musicologist, Dr. Lawrence Ferrara. However, "the mere existence of dueling expert reports does not necessarily create a triable issue of fact." *Gable v. National Broadcast Co.*, 727 F.Supp. 2d 815, 836-37 (C.D. Cal. 2010); *see also Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003) (affirming defense summary judgment in copyright case where the parties each submitted expert reports).

repeating "boom" lyrics in "Boom Boom Pow" is different than "Boom Dynamite;"[7] (6) there are no sixteenth notes in any of the pickups preceeding the repeating "boom" lyrics in "Boom Dynamite," but they are present in "Boom Boom Pow;" (7) the repeating "boom" lyrics are never set to multiple pitches in "Boom Dynamite," but "Boom Boom Pow" includes several instances of repeating "boom" lyrics which are set to at least two different pitches; (8) the repeating "boom" lyrics in "Boom Boom Pow" include multiple instances of ascending octave and major sixth intervals whereas there are none in "Boom Dynamite;" and (9) although the hooks of the works occur in the chorus, they are different because the hook of "Boom Boom Pow" is "gotta get get boom boom boom" (not "I got that boom boom boom") and the hook of "Boom Dynamite" is "I got that boom dynamite," a phrase that does not appear in "Boom Boom Pow."

In addition, while Plaintiffs argue that both works have similar secondary hooks, Dr. Stewart again agrees with Dr. Ferrara that there are several differences, including that: (1) the phrase "let the beat rock" used in "Boom Boom Pow" contains a 50 percent difference in wording compared to the phrase "make the beat go" used in "Boom Dynamite;" (2) the phrase "make the beat go" is heard only one time in the breakdown of "Boom Dynamite" while the phrase "let the beat rock" is heard three times in the breakdown of "Boom Boom Pow" and is set to rhythms that are not present in "Boom Dynamite;" and (3) the phrase "make the beat go" is heard very early in the breakdown of "Boom Dynamite" whereas "let the beat rock" is not heard until more than 25 measures have passed in the breakdown of "Boom Boom Pow."

Accordingly, the Court concludes that there are numerous substantial and significant differences between "Boom Boom Pow" and "Boom Dynamite" with respect to each of the three allegedly protectable elements identified by Plaintiffs, and based upon those differences, the Court concludes that no reasonable jury could find that "Boom Boom Pow" and "Boom Dynamite" are substantially similar in idea and expression.

### 2. The Non-Protectable Elements in "Boom Dynamite" Are Not Entitled to Copyright Protection.

Plaintiffs' arrangement of admittedly non-protectable elements is not entitled to copyright protection. "[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003); *see also Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 347-51 (1991) ("Common sense tells us that 100 uncopyrightable facts do not magically change their status when gathered together in one place"). In this case, Dr. Stewart identifies several non-protectable elements that he claims are the same in both "Boom Boom Pow" and "Boom Dynamite." He also refers to a "unique and distinct arrangement" and "the special arrangement and combination of 'non-protectable' elements," but he fails to state what that arrangement actually is, or how that arrangement is unique, distinct, or special. In his deposition testimony, Dr. Stewart was unable to identify the criteria Plaintiffs employed in selecting and

---

[7] The repeating "boom" lyrics in "Boom Boom Pow" are iterated on the first, fourth, and seventh sixteenth beats, whereas the first three of the five repeating "boom" lyrics in "Boom Dynamite" are heard on the first, seventh, and eleventh sixteenth beats.

arranging the constituent elements of "Boom Dynamite." In *Onofrio v. Reznor*, the Ninth Circuit rejected the mere identification of similar non-protectable elements in two works as entitling a plaintiff to copyright protection:

> Onofrio relies on the testimony of his expert, Dr. Erica Muhl, to show such similarity. Although Dr. Muhl uses the appropriate legal phrases throughout her report comparing the songs of Onofrio and Reznor, her conclusions are not supported with fact or analysis. Her report identifies and lists several unprotectable musical elements that she found in both Onofrio's songs and the comparable songs by Reznor, but she fails to explain how the arrangement or combination of those unprotected elements in Onofrio's songs created an original, protectable expression which was then copied by Reznor. Thus, the district court did not err in finding that Onofrio failed to raise a material issue of disputed fact concerning the similarity of the songs.

208 F.3d 222 (9th Cir. 2000); *see, also, Moore v. Columbia Pictures Industries, Inc.,* 972 F.2d 939, 946 (8th Cir.1992) (summary judgment proper where expert testimony presented by non-moving party is inconclusive and unsubstantiated); *McRae v. Smith,* 968 F.Supp. 559, 565-66 (D.Colo.1997) (summary judgment proper where expert testimony presented by non-moving party fails to distinguish between protectable and common, nonprotectable elements of a song).

In addition, at his deposition, Dr. Stewart acknowledged the obvious differences in many of the non-protectable elements that his report characterized as being the same or similar in "Boom Boom Pow" and "Boom Dynamite." For example, Dr. Stewart stated in his report that both songs have a nearly identical drum pattern; however, he candidly admitted at his deposition that the drumbeats in both works are commonplace and widely used. He also admitted that the drumbeat in "Boom Dynamite" is more similar to the drumbeats in Tony Basil's "Mickey" (1982) and Salt-N-Pepa's "Push-it" (1987) than to the basic drumbeat in "Boom Boom Pow."[8] Dr. Stewart admitted that the drumbeats found in "Boom Dynamite" include the use of shaker, tambourine, and cowbell, and that none of these elements are present in "Boom Boom Pow."[9]

Accordingly, the Court concludes that while "Boom Boom Pow" and "Boom Dynamite" contain similarities, those similarities encompass elements that are not protectable and Plaintiffs have failed to demonstrate that the selection, coordination, and arrangement of those non-protectable elements created an original, protectable expression that was then copied by the

---

[8] In a desperate attempt to save his conclusion that "Boom Boom Pow" is substantially similar to "Boom Dynamite," Dr. Stewart claims that the similarities among the drumbeats in "Boom Dynamite," "Mickey," and "Push-it" are merely the result of coincidence, but, conversely and contradictorily, he claims that the (fewer) similarities between the drumbeats in "Boom Dynamite" and "Boom Boom Pow" are evidence of copying.

[9] Dr. Stewart also agreed that the length of the two works is different, both in terms of passage of time and number of measures present in each work, and that the two works have different tempos. In addition, Dr. Stewart admitted that while the two works have similar structures and are written in the same genre, thousands of works have been written using a similar structure or in that same genre.

Adams Defendants.

IV.     **Conclusion**

For all the foregoing reasons, the Court concludes that viewing the evidence in the light most favorable to Plaintiffs, no reasonable jury could find substantial similarity of ideas and expression in "Boom Boom Pow" and "Boom Dynamite." Accordingly, the Court concludes as a matter of law that the Adams Defendants are entitled to summary judgment, and their Motion is **GRANTED**. In light of the Court's ruling on the merits of Plaintiffs' claim and because the identical law and facts on the issue of substantial similarity apply to all of the defendants, the Court also concludes that the remaining defendants, Stacy Ferguson p/k/a Fergie; Headphone Junkie Publishing, LLC; EMI April Music Publishing, Inc.; UMG Recordings, Inc.; and Interscope Records ("Non-Moving Defendants"), are entitled to judgment on Plaintiffs' claim. Accordingly, the Court exercises its discretion and *sua sponte* **GRANTS** summary judgment as to the Non-Moving Defendants. *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) ("[T]he district court has the authority to decide an issue on summary judgment *sua sponte*, if the losing party was on notice to come forward with its evidence").

IT IS SO ORDERED.