# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| REBECCA FRANCESCATTI, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:11-cv-05270 |
| | ) | |
| v. | ) | |
| | ) | Honorable Marvin E. Aspen |
| STEFANI JOANNE GERMANOTTA | ) | Magistrate Judge Jeffrey T. Gilbert |
| p/k/a LADY GAGA, INTERSCOPE RECORDS, | ) | |
| UNIVERSAL MUSIC GROUP, INC., | ) | ECF CASE |
| DJ WHITE SHADOW, LLC, and | ) | |
| BRIAN JOSEPH GAYNOR, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS ("SAF")

---

Pursuant to Local Rule 56.1, Defendants Stefani Joanne Germanotta, UMG Recordings, Inc. (incorrectly sued herein as Interscope Records and Universal Music Group, Inc.), DJ White Shadow LLC, and Brian Gaynor hereby submit the following responses to plaintiff's Statement of Additional Material Facts:

1.      In January 2010, Brian Lee introduced Defendant Brian Gaynor ("Gaynor") to Defendant Paul Blair ("Blair") p/k/a DJ White Shadow ("DJWS") for the purpose of creating original composition and materials to be forwarded to Defendant Germanotta to use in her creative process regarding songs for potential inclusion on her planned *Born this Way* album. (Ex. G, Gaynor's Response to Plaintiff's First Interrogatories, Resp. No. 4).  Blair states that the relationship with Lady Gaga, along with release of Lady Gaga single and albums is "DJWS's most significant economic opportunity."  (Ex. K, (DJWS Dep. Ex. 16), p. 4, ¶ 12; DJWS Dep. Ex. 17 at p. 4).  Gaynor called it a "killer opportunity."  (Ex. C, Gaynor Dep. at p. 114:2).

**RESPONSE:**

Objection on the ground that SAF ¶ 1 improperly states multiple facts. Undisputed that in January 2010, Brian Lee introduced Gaynor to Paul Blair in January 2010 to assist in creating original composition and materials to submit to Gaga to use in her creative process regarding songs for potential inclusion on the album *Born This Way*.

Disputed. Blair testified only that the impending release represented the "most significant economic opportunity to date" for DJ White Shadow, LLC. Ex. 33, DJWS Tr. at 82:14-83:4. The word "it" in reference to Gaynor's testimony is misleading. Gaynor called working with *Blair* a "killer opportunity." Ex. 34, Gaynor Tr. at 113:13-114: 2.

2. On January 27, 2010, DJWS provided 14 mp3 music tracks to Germanotta via file sharing service - download link. (Ex. N, (Blair Dep. Ex. 7); *See,* Ex. FF, DJWS Response to Plaintiff's First Interrogatories, Resp. No. 10 (Blair Dep. Ex. 8)).

**RESPONSE:**

Undisputed.

3. On April 6, 2010, Paul Blair communicates with Defendant Germanotta, "What's going on?" (Ex. M, (Blair Dep. Ex. 10)). On April 6, 2010, Paul Blair notifies Germanotta that he ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**RESPONSE:**

Undisputed.

4. Blair testified the ████████████████████████████████████████████████ (Ex. N, Blair Dep. at pp. 186:24-187:4; 187:19-24; DJWS Dep. Ex. 10 at DJWS00246).

**RESPONSE:**

Undisputed.

5.     Blair had no recollection of what "on-the-verge stuff he sent to Germanotta in April 2010. (Ex. N, Blair Dep. at p. 188:20-24).

**RESPONSE:**

Disputed to the extent SAF ¶ 5 represents that Blair did in fact send the "on-the-verge" stuff to Gaga.  More accurately  Also disputed that Blair could not identify the "on-the-verge" stuff at all

6.     On April 8, 2010 and April 9, 2010, Defendant Gaynor was communicating with Plaintiff Francescatti, and working on her music.  The two were exchanging music files and CD recordings for a Francescatti song. (Ex.II, RF000147; Gaynor Dep. Ex. 23).  Between April 9, 2010 and May 8, 2010 Francescatti and Gaynor exchanged emails, telephone text messages and music CD's.  Gaynor was doing music mixing for Francescatti songs.  (Ex. II, RF000177-228 (Gaynor Dep. Ex. 23)

**RESPONSE:**

Disputed.  Plaintiff Francescatti gave Defendant Gaynor a single CD relating to her song "Something New" for which Defendant Gaynor had agreed to, and did on April 9, 2010, provide a "rough mix."  Ex. II, Dkt No. 146-36, RF000177-180, 228.  On May 1, 2010, Plaintiff Francescatti asked Gaynor to mix two more songs, *id.* at RF000191, but there is no indication in the record that Gaynor completed those mixes.

Objection and move to strike Plaintiff's citation to RF000147 as misleading and irrelevant.  It has no relation to the events represented in RF000177-228.

7.     At about the same time, April 9, 2010, Blair was asking Gaynor to produce some tracks for Germanotta. ███████████████████████████████████████████████████████

████████████████████████████████████████ (Ex. N, Blair Dep. at p. 188:22-189:16).

**RESPONSE:**

Objection and move to strike on the grounds that cited portions of Blair's deposition do not establish this fact.  Also disputed that Blair asked Gaynor to produce tracks for Gaga. ████

████████████████████████████████████████████████████not to produce

tracks for Gaga.  RSOF Ex. N, Dkt. No. 149-9, Blair Tr. at 188:18-189:11.

8.     On May 1, 2010, Gaynor tells Francescatti that he already placed three tracks on Germanotta's next record and was being flown to Paris in three weeks.  (Ex. H, (Gaynor Dep. Ex. 24); Ex. C, Gaynor Dep. at p. 109:3-110:24.  Gaynor states: "I seriously didn't believe that this was really happening, until she [Lady Gaga] called me, and sent me my tracks with her ruff vocals on them over iChat."  (Ex. H, (Gaynor Dep. Ex. 24); Ex. C, Gaynor Dep. at 114:3-8).

**RESPONSE:**

Undisputed that Gaynor sent Francescatti and e-mail on May 1, 2010 with the quoted statements.  Undisputed that in that e-mail, Gaynor wrote that he placed three tracks on Gaga's next record and that "she's flying my partners and myself to Paris France on May 19th to join her on tour and finish the records."

Disputed to the extent SAF ¶ 8 implies that the trip to Paris actually occurred.  Gaynor testified that ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

4

9.    RedOne and Ms. Germanotta are willing to mislead the public to cover her lack of originality and the fact that she would take credit for writing and producing another performer's song *[Invading My Mind* by Jennifer Lopez]* and wanted compensation for despite performing no work on that song. Ex. E, RedOne Dep. at 103:24-104:1; 105:2-15; 121:17-25; 126:6-8; Ex. B, Germanotta Dep. at 168:13-171:2; 172:5-7; Ex. J, LG001336-1344).

**RESPONSE:**

Object and move to strike the statement, "RedOne and Ms. Germanotta are willing to mislead the public to cover her lack of originality" on the ground that it the statement is improper argument. Disputed that ████████████████████████████████████████████████ ████████████████████████████ Undisputed that ████████████████████ ████████████████████████████ Undisputed that ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████

10.    Germanotta's Interrogatory Response says on May 9, 2010 she conceived, wrote and recorded *Judas* with RedOne. (Ex. 13, Germanotta Interrogatory Resp. No. 6). The album "Born This Way" states that the song Judas was recorded in Paris at Gang Studios (Liner notes). Testimony of Germanotta regarding the location and date of the conception of the creation and recording of the song is in conflict. (Ex. B, Germanota Dep. at p. 92:15-18). Testimony of RedOne also in conflict (Ex. E, RedOne Dep. at pp. 51-53).

**RESPONSE:**

Objection and move to strike the improper characterization and argument that testimony "is in conflict." Disputed that there is any material conflict at all. Disputed to the extent SAF ¶ 10 misrepresents Gaga's Interrogatory Response No. 6. Gaga did not specify the date on which the entire composition that would become *Judas* was conceived, written, and recorded. SOUF Ex. 13, Dkt. No. 127-3, Gaga Interrogatory Response No. 6. Gaga's Interrogatory Response

does not specify where she and RedOne first discussed their ideas for *Judas*. *Id.* The Interrogatory Response states that on May 9, 2010, she met with RedOne and brainstormed ideas for a musical composition, during which time she settled on the name "Judas" for the composition as well as the concepts and themes to be expressed in the composition. *Id.* The Interrogatory Response does not specify the place(s) or date(s) that Gaga and RedOne worked on *Judas* in-studio. *Id.* ("Germanotta and RedOne then collaborated in-studio, with Germanotta creating the lyrics, and Germanotta and RedOne creating the music to the musical composition, simultaneously.")

Further disputed on the grounds that the cited Gaga testimony does not establish or relate to the location and date of the conception, creation, or recording of *Judas*. Gaga testified that she "believe[d]" she and RedOne started writing *Judas* in Amsterdam, after which recording moved to Paris. RSOF Ex. B, Dkt. No. 149-2, Gaga Tr. at 93:8-18.

Disputed to the extent SAF ¶ 10 misrepresents the testimony of RedOne. ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

11.     On June 9, 2010, Gaynor states in an email to Francescatti that he met Defendant Germanotta on his trip to Europe, and provides details about Germanotta. (Ex. I, (Gaynor Dep. Ex. 25). Gaynor later recants, stating he lied to Ms. Francescatti to lead her on. (Ex. C, Gaynor Dep. at p. 126:16-18; 123:7-24).

**RESPONSE:**

Undisputed.

12.     Dr. Yaz Shehab is a graduate of NYU School of Music with a Master's Degree in Computer Music Composition and a Ph.D. from the University of Illinois in Music Arts, majoring in Computer Music Composition. (Ex. 19, Shehab Rep. at pp. 24-27).

**RESPONSE:**

Disputed that Dr. Shehab graduated from an institution titled "NYU School of Music."

Dr. Shehab received a Master's of Arts from New York University. SOUF Ex. 19, Dkt. No. 118-20, Shehab Rep. at 24-27.

Disputed that Dr. Shehab's Master's Degree is in Computer Music Composition. Dr.

Shehab testified that NYU does not offer a degree in "computer music composition." Rather, the

degree is in "music composition with an emphasis in computer music." Ex. 37, Shehab Tr. at

33:2-24.

Disputed that Dr. Shehab received a Ph.D. Dr. Shehab received a Doctor of Musical Arts

from the University of Illinois at Urbana–Champaign, majoring in Computer Music

Composition. SOUF Ex. 19, Dkt. No. 118-20, Shehab Rep. at 24-27.

13.     Dr. Shehab is an expert in computer music composition and digital audio recorded music production. For more than 20 years, Dr. Shehab has been involved in the music production, recording, publishing, marketing and digital media delivery business (Ex. 19, Shehab Rep. at pp. 24-27).

**RESPONSE:**

Undisputed for purposes of this motion. Defendants reserve their right to make a

*Daubert* challenge to Mr. Shehab's testimony as well as that of Mr. McGeehan and Dr. Cockrell.

14.     Dr. Lawrence Ferrara has a Ph.D. from NYU in Music, specializing in Music Theory. (Ex. 8, Ferrara Rep. at Exhibit 5). Dr. Ferrara does not have any university degree in Computer Music Composition (Ex. D, Ferrara Dep. at p. 154:6-8). Ferrara notes that computer

programs "like Pro Tools, can do many, many different things that manipulate the music." (Ex. D, Ferrara Dep. at p. 102:12-14). Since 2005, Dr. Ferrara has testified in 25 cases regarding copyright infringement 22 of which he testified for the defendant. (Ex. D, Ferrara Dep. at p. 84:20-85:10; Dep. Ex. 28).

**RESPONSE:**

Objection on the grounds that SAF ¶ 14 improperly states multiple facts. Undisputed that Dr. Lawrence Ferrara holds a Ph.D. from NYU in Music Theory / Analysis / Piano. Undisputed that Dr. Ferrara does not hold a degree in computer music composition because there is no such degree. RSAF ¶ 12; *see also* RSOF Ex. D, Dkt. No. 146-5, Ferrara Tr. at 154:6-8. Undisputed that Dr. Ferrara testified as quoted.

Objection and disputed on the grounds that the cited portions of the record do not establish that "Since 2005, Dr. Ferrara has testified in 25 cases regarding copyright infringement 22 of which he testified for the defendant." Plaintiff's Deposition Ex. 28 is a list of 23 cases that plaintiff's counsel identified, one of which Dr. Ferrara testified he did not remember. Ex. 38; Ex. 39, Ferrara Tr. at 82:20-84:19. Dr. Ferrara testified that he provided opinions for the plaintiff in three of those cases. RSOF Ex. D, Dkt. No. 146-5 Ferrara Tr. at 84:20-85:10.

15. There are differences between the traditional pop song composition and recording process and Electronic Dance Music (EDM) composition and recording process (Ex. 19, Shehab Rep. at pp. 7-10). Traditional pop music is composed by musicians, song writers and performers. Musicians perform the song on their respective musical instruments inside the recording studio to be recorded by a record engineer. Computers using computer software are often used to record the music tracks. Audio processing equipment is used to enhance and provide audio effects to the song. (Ex. 19, Shehab Rep. at p. 7).

**RESPONSE:**

Disputed only to the extent SAF ¶ 7 implies that every pop song is composed and recorded in the same way. Dr. Shehab's report describes "common" practices. SOUF Ex. 19, Dkt. No. 118-20, Shehab Rep. at 7-10.

16.    Electronic Dance Music (EDM) is not necessarily composed by musicians, song writers and performers.  More commonly, EDM is composed, or rather constructed, by DJ's (disc jockeys), audio engineers and record producers using pre-recording music loops and audio samples.  (Ex. 19, Shehab Rep. at pp. 8-10).

**RESPONSE:**

Undisputed.

17.    The act of constructing an EDM song relies heavily on computers utilizing some type of software, referred to as Digital Audio Workstation (DAW) to record and manipulate the sounds.  Prerecorded vocal tracks are then layered onto the recording.  In other cases, a vocalist will sing along with the music track to produce a layered musical track.  (Ex. 19, Shehab Rep. at p. 8).  The process involves layering separate audio tracks on top of each other (Ex. N, Blair Dep. at p. 78:14-82:7)).

**RESPONSE:**

Disputed to the extent SAF ¶ 17 is an incomplete excerpt of Dr. Shehab's description of EDM.  Dr. Shehab also notes that for EDM, instrumentalists are sometimes "enlisted to play additional instruments on top of the tracks."  SOUF Ex. 19, Dkt. No. 118-20, Shehab Rep. at 8.  Undisputed that the process of creating EDM involves layering separate audio tracks.

18.    Germanotta's song "Judas" was constructed on a Digital Audio Workstation (DAW) - no live musicians played live instruments.  (Ex. E, RedOne Dep. at p. 37:18-20).

**RESPONSE:**

Undisputed that RedOne used a DAW in creating *Judas*.  Disputed that "no live musicians played live instruments."  ████████████████████

████████████████████████████████

████████████████████████████████

Additionally, Gaga, also a live musician with a live instrument (her voice), performed the vocals

9

for *Judas*, *see* RSOF Ex. B, Dkt. No. 149-2, Gaga Tr. at 93:6-22, including the vocal melody

alleged to be copied from the viola / violin-2 fragment in *Juda*.

19.     Dr. Ferrara testified that he considers Rebecca Francescatti's song "Juda" to be creative music expression. (Ex. D, Ferrara Dep. at p.114:9-22).

**RESPONSE:**

Disputed to the extent SAF ¶ 19 is an incomplete representation of Dr. Ferrara's

testimony.   When asked whether *Juda* constitutes original musical expression, Dr. Ferrara

answered, "In its entirety, yes." RSOF Ex. D, Dkt No. 146-5, Ferrara Tr. at 114:9-22.  Dr.

Ferrara also found particular parts, excerpts, or elements of the song *Juda* to be "generic,"

including virtually all the elements alleged to be copied in *Judas*.  SOUF Ex. 8, Dkt No. 118-9,

Ferrara Report ¶¶ 12, 81, 85, 87, 128, 166, 168, 182.


20.     Dr. Cockrell identifies the original music expression in Plaintiffs song "Juda" includes:  (1) Francescatti's repetitive use of the word "Juda" as a refrain throughout the song; (2) The montone quality of the verse melody used to direct attention to texture and set up melodic chorus; (3) The formal characteristics of breakdown section of "Juda"; (4) The repeated use of "Juda" as the memorable hook; and (5) The use of minor 3rd and diminish 7th scale degrees to give the verses dark, foreboding, musical quality. (Ex. 18, Cockrell Rep. at pp. 6-8).

**RESPONSE:**

Disputed.  On the pages cited, Dr. Cockrell identifies the elements listed in SAF ¶ 20 as

similarities between *Juda* and *Judas*, not as original.  The only elements Dr. Cockrell identifies

as "original" in his report are the repeated use of the word "Juda" as a refrain throughout the

song and the monotone quality of the verse melody.  SOUF Ex. 18, Dkt No. 118-19, Cockrell

Rep. at 10, 12.  Dr. Cockrell acknowledged that Dr. Ferrara identified multiple songs created

before *Juda* and *Judas* that repeated the word "Judas."  Ex. 40, Cockrell Tr. at 145:11-22; SOUF

¶ 59. Regarding the "monotone quality of the verse melody," Dr. Cockrell agreed that the notes

in the *Judas* verse melody are all the same while the notes in the *Juda* verse melody are *not* the same pitch. SOUF Ex. 21, Dkt. No. 118-22, Cockrell Tr. at 111:1-112:6. Dr. Cockrell also agreed that the rhythmic durations of the notes in the verse melodies are different. *Id.* at 112:7-11. Dr. Cockrell admits that he relied on McGeehan's analysis for his conclusions regarding the breakdown sections. Ex. 40, Cockrell Tr. at 67:6-69:16. Dr. Cockrell testified that the use of minor third and diminished seventh scale degrees is not a substantial similarity and that many other choruses in other songs are in minor keys. SOUF Ex. 21, Dkt. No. 118-22, Cockrell Tr. at 137:14-139:14.

21. Dr. Shehab finds and demonstrates Gaynor's sonic fingerprint on "Judas" sound recording. (Ex. 19, Shehab Rep. at p. 16).

**RESPONSE:**

Disputed. In deposition, Dr. Shehab admitted that other musicians, engineers, and producers use the techniques that Dr Shehab attributes to Gaynor and that he does not know whether the alleged "sonic fingerprints" in *Judas* came from Gaynor. SOUF ¶ 100, Ex. 20, Dkt. No. 118-21, Shehab Tr. at 222:7-23. In his report, Dr. Shehab concludes only that Gaynor's sonic fingerprint "is *likely* present in *Judas*." SOUF Ex. 19, Dkt. No. 118-20, Shehab Rep. at 16 (emphasis added). Moreover, Dr. Shehab continues: "Given the production team of Brian Gaynor & Paul Blair, it is possible that Paul Blair is responsible for certain unique sonic attributes present in Germanotta's *Judas*." *Id.*

Defendants' expert Paul Geluso identified the techniques that Dr. Shehab attributes to Gaynor in prior Gaga/RedOne collaborations. SOUF ¶ 102, Ex. 27, Dkt. No. 118-28, Geluso Rep., at Ex. A.

22.     McGeehan finds and notes his original music and Gaynor's signature production sounds in Defendant's "Judas" sound recording.   (Ex. P, McGeehan Dep. at pp. 15:3-8; 193:19-195:22).

**RESPONSE:**

Disputed regarding the characterization of McGeehan's music as "original."  The melodic lines from *Judas* in which McGeehan claims to hear his music from *Juda* are similar to Gaga's prior work, *Bad Romance*.  *See* RSOF ¶¶ 14, 52; SOUF Ex. 7, Dkt. No. 118-5, Tr. 2, 8; SOUF Ex. 8, Dkt. No. 118-9, Visual Exhibits D and L.  Additionally, the melodic phrase McGeehan identifies appears in prior work, including Blondie's *Call Me* and basic music training books. SOUF ¶ 51.  McGeehan admits that the melodic contour he identifies in *Juda* and *Judas* is present in *Call Me* and music training books.  Ex. 41, McGeehan Tr. at 148:7-153:3.  Also disputed regarding the characterization of Gaynor's production sounds as "signature." McGeehan testified that Gaynor is "probably not" the only producer that uses the sounds McGeehan identifies – "funny sounds" and a glissando.  McGeehan testified that "a glissando has been used for centuries in the practice of music." *Id.* at 196:21-197:15.


23.     Colin McGeehan identifies and demonstrates the presence of his original recorded violin chorus melody in the vocal melody in "Judas."   (Ex. P, McGeehan Dep. at pp. 190:18-191:17; Ex. RR at Audio Tracks 5, 6 and 7).

**RESPONSE:**

Disputed.  McGeehan's "identification" of the chorus melody of *Juda* in the vocal melody in *Judas* is the product of multiple layers of audio manipulation.  SOUF ¶¶ 49-50. McGeehan employed five manipulations of the melodic fragments in *Juda* and *Judas* to arrive at his conclusion of similarity.   *Id.*   McGeehan does not deny that he employed these

12

manipulations. SOUF ¶ 49, Ex. 12, Dkt. No. 118-13, McGeehan Tr. at 84:1-6; 84:22-85:2; 87:6-14; 95:5-18; 95:23-97:13; 112:15-23; 120:16-123:18; 125:21-126:10.

Disputed regarding the characterization of McGeehan's music as "original." The melodic lines from *Judas* in which McGeehan claims to hear his music from *Juda* are similar to Gaga's prior work, *Bad Romance. See* RSOF ¶¶ 14, 52; SOUF Ex. 7, Dkt. No. 118-5, Tr. 2, 8; SOUF Ex. 8, Dkt. No. 118-9, Visual Exhibits D and L. Additionally, the melodic phrase McGeehan identifies appears in prior work, including Blondie's *Call Me* and basic music training books. SOUF ¶ 51. McGeehan admits that the melodic contour he identifies in *Juda* and *Judas* is present in *Call Me* and music training books. Ex. 41, McGeehan Tr. at 148:7-153:3.

24. Dr. Shehab identifies and demonstrates the hook of "Juda" and the hook of "Judas" are strikingly similar. (Ex. 19, Shehab Rep. at pp. 11-12).

**RESPONSE:**

Disputed. In his report, Dr. Shehab asserts that only after his colleague manipulated the pitch and tempo of *Juda* and *Judas* did he observe a "striking similarity" between the chorus sections of the songs. SOUF Ex. 19, Dkt. No. 118-20, Shehab Rep. at 12. As opposed to the definition of "striking similarity" in copyright law, Dr. Shehab testified that he considers "striking similarity" to mean "similar enough to make me consider that the two lines have some relationships, that some line is a derivative of the other line." Ex. 37, Shehab Tr., at 139:9-140:3. Furthermore, multiple musicians have repeated the words "Juda" or "Judas" in song choruses before Francescatti composed *Juda* or Gaga composed *Judas*, and Dr. Shehab admitted that there were multiple similarities to *Juda* in the way the words "Juda" and "Judas" were sung in those songs. SOUF ¶¶ 59, 61-63, 65. Likewise, multiple musicians, including Lady Gaga, have repeated the title of a song in works that predate *Juda* and *Judas*. RSOF ¶ 66.

13

25.    Gaynor testified that it was easy to take a person's pre-recorded music track and manipulate it into a sound recording. (Ex. C, Gaynor Dep. at pp. 130:10-133:4; Ex. JJ, (Ex. 26 to Gaynor Dep.)).

**RESPONSE:**

Disputed to the extent that SAF ¶ 25 states a broader proposition than was conveyed by

Gaynor during his deposition. 

26.    Blair utilizes VST, virtual studio instruments, to make sounds of his tracks. In response to the question:

Q.    So putting all these parts together and manipulating the sounds and changing their pitches and their beats and looping, that's the way music is made today?

A.    The kind of music I make, yeah.

(Ex. N, Blair Dep. at pp. 225:22-227:2).

**RESPONSE:**

Undisputed that Blair utilizes virtual studio instruments.

27.    Blair testified the opportunity to submit music for consideration by Lady Gaga was his "most significant economic opportunity" (Ex. KK, Emergency Motion for TRO, at p. 4 (DJWS Dep. Ex. 17); Ex. K, DJWS Dep. at p. 83:2-5). Gaynor called it a "killer opportunity." (Ex. C, Gaynor Dep. at p. 114:2).

**RESPONSE:**

Disputed.    Blair testified only that the impending release represented the "most

significant economic opportunity to date" for DJ White Shadow, LLC. Ex. 33, DJWS Tr. at

82:14-83:4. The word "it" in reference to Gaynor's testimony is misleading. Gaynor called working with *Blair* a "killer opportunity." Ex. 34, Gaynor Tr. at 113:13-114: 2.

28. The individuals who were present and worked on recording, mixing and production of Germanotta's song "Judas" include Stefani Germanotta, Nadir Khayat/RedOne, Trevor Muzzy, Dave Russell, Vincent Herbert and Taymor Braxton. (Ex. B, Germanotta Dep. at 93:2-96:6).

**RESPONSE:**

Undisputed.

29. Paul Blair and Brian Gaynor worked on the production and recording of "Judas-DJ White Shadow Remix" before completion and release of Lady Gaga's song "Judas" in or about April 2011. (Ex. N, Blair Dep. at 213:9-225:18).

**RESPONSE:**

Disputed to the extent that Blair's testimony does not establish that *Judas* was not "completed" by April 2011. Disputed to the extent SAF ¶ 29 misrepresents the extent of Blair's and Gaynor's respective contributions to the remix. Blair testified that ███████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

30. Lady Gaga's album, "Born This Way" was released to the public on May 23, 2011. The album contains 14 songs. (Ex. LL, Album Liner Notes.)

**RESPONSE:**

Undisputed.

31.     Paul Blair/DJ White Shadow received producer and/or writer credit for contributions on nine songs on the initial album release (nine in total). (Ex. N, Blair Dep. at pp. 164:7-165:7). Although Defendant Gaynor wrote three songs for Germanotta's album, he received credit for his contribution to only one song "Electric Chapel." (Ex. C, Gaynor Dep. at pp. 138:11-141:7). Gaynor characterized his contributions to the *Born This Way* album as "significant." (Ex. C, Gaynor Dep. at p. 32:19-21)

**RESPONSE:**

Objection and move to strike on the grounds that SAF ¶ 31 states multiple facts. Undisputed that Blair/DJWS received producer and/or writer credit for contributions on nine songs on the initial album release.

Disputed to the extent SAF ¶ 31 mischaracterizes Gaynor's testimony. Gaynor testified,



32.     Dave Russell, Germanotta's recording engineer, received credit for recording and/or mixing contributions on 12 songs. (Ex. LL, Album Liner Notes)

**RESPONSE:**

Undisputed.

33.     Dr. Shehab found that both artists and both songs are identified and known by the "Juda" refrain, therefore, the songs are branded in the same way. (Ex. 19, Shehab Rep. at p. 17).

**RESPONSE:**

Disputed that Gaga and *Judas* are known by the "Juda" refrain. Dr. Shehab compared the "'Juda' and 'Judas' brands." SOUF Ex. 19, Dkt. No. 118-20, Shehab Rep. at 17. Further disputed that the songs are "branded in the same way." Dr. Shehab described "an identical branding attribute." *Id.* Disputed to the extent SAF ¶ 33 suggests Dr. Shehab's findings on branding are relevant to substantial similarity. Dr. Shehab's testified that his branding analysis "doesn't affect the music similarity." SOUF ¶ 113, Ex. 20, Dkt. No. 118-21, Shehab Tr. at 236:17-24.

Disputed that a song can have a brand or be "branded" in any respect. Ex. 42, King. Tr. at 36:3-20; Ex. 43, King Report, at 19-20.

34. Although Germanotta testified that her music production team (Garibay/Russell/Blair) did not intersect or collaborate with RedOne/Trevor Muzzy, all of those recording participants were together in at least one music studio as well as the traveling studio bus. (Ex. B, Germanotta Dep. at pp. 138:19-143:13; *see* Photo at Ex. MM, (Germanotta Dep. Ex. 32). Germanotta identifies the people in that photo from left to right as: RedOne, herself, Fernando Garibay, Paul Blair/DJ White Shadow and Dave Russell. Nadir Khayat testified he was asked by Germanotta to work with Blair. (Ex. E, RedOne Dep. at pp. 62:21-64:8).

**RESPONSE:**

Objection on the ground that SAF ¶ 34 improperly states multiple facts and misrepresents testimony.

Disputed. Gaga testified that DJ White Shadow and RedOne worked together "maybe one day." RSOF Ex. B, Dkt. No. 149-2, Gaga Tr. at 140:19-141:3. Regarding the photograph at Exhibit MM, ███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ It is undisputed that Gaga identified the individuals depicted in Exhibit

MM as described; however, the photograph does not depict the individuals recording music.

RSOF Ex. MM, Dkt. No. 146-40.

    Disputed that Gaga "asked" RedOne to work with Blair. ████████████

████████████████████████████████

████████

    35.    Gaynor describes his music composition process after he gets up in the morning: "Get a cup of coffee, chain smoke some cigarettes - open up my computer, plug in my keyboard, see where it takes me." (Ex. C, Gaynor Dep. at pp. 24:10-25:6).

**RESPONSE:**

    Disputed to the extent that SAF ¶ 35 provides only a partial description of Gaynor's

music composition process. For example, Gaynor testified that he also collaborates with and

takes direction from others. *See, e.g.*, Ex. 34, Gaynor Dep. at 29:15-31:12 (describing the

process of creating the score for the Oprah Winfrey White House Christmas Special); *id.* at

84:13-85:4 (████████████████████████████████

████████).

    36.    Defendant Gaynor was the recording engineer and played bass on Francescatti's song "Juda" and participated in mixing the song for release to the public. (Cmpl. Ex. 1, ¶¶ 22-24).

**RESPONSE:**

    Objection and move to strike on the grounds that SAF ¶ 36 does not cite to the record.

Citation to the Complaint does not cite to admissible evidence. Still, undisputed to the extent

that Francescatti and Gaynor have testified that Gaynor worked in such capacities on *Juda*. *See,*

*e.g.*, RSOF Ex. C, Dkt. No. 149-3, Gaynor Dep., at 56:3-13, 58:21-23.

37.     Defendant Gaynor not only has possession of all of the tracks and music sessions files for "Juda," he purchased the song from Apple iTunes and has that song on one or more of his Apple computer products. (Ex. C, Gaynor Dep. at pp. 54:15-59:12; Ex. G, Gaynor Resp. to Francescatti First Interrogs., Resp. No. 2).  Plaintiff, Francescatti and Colin McGeehan have first-hand knowledge that Gaynor has all of the "Juda" recording session files on a computer hard drive in his possession, custody or control. (Compl., Ex. 1 at ¶¶ 22-24; Ex. P, McGeehan Dep. at p. 222:6-24; Ex. A, Francescatti Dep. at p. 230:20-233:23).

**RESPONSE:**

Objection and move to strike on the grounds that the cited testimony and Interrogatory Response does not support the stated fact that "Gaynor … has possession of all of the tracks and music sessions files for "Juda," he purchased the song from Apple iTunes and has that song on one or more of his Apple computer products."  Objection on the grounds that citation to the Complaint does not cite to admissible evidence.

Undisputed that Francescatti and McGeehan claim to know that Gaynor has all of the *Juda* recording session files in his possession, custody, or control.  RSOF Ex. A, Dkt. No. 149-1, Francescatti Dep. at 57:4-7; RSOF Ex. P, Dkt. No. 146-17, McGeehan Dep. at 222:6-22.

38.     Colin McGeehan wrote and performed the violin and viola parts for Plaintiffs song "Juda."  McGeehan hears the music he wrote and performed on Plaintiffs "Juda" in Defendant's song "Judas."  (Ex. A, Francescatti Dep. at pp. 230:20-233:9; Ex. P, McGeehan Dep. at p. 15:3-8). (Ex. RR at Audio Tracks 5, 6 and 7).

**RESPONSE:**

Objection on the ground that SAF ¶ 38 improperly states multiple facts.  Undisputed that McGeehan claims to hear the music he wrote and performed on Plaintiff's *Juda* on Defendant's *Judas.*

39.     RedOne is also willing to make misleading statements regarding the production of songs to cover for Germanotta's fear of being unoriginal.  (Plaintiffs Deposition Exhibit 35) (Ex. J, LG01339 - 1342 ████████████████████████████████████████████ ██████████████████████████████████ ).  Incredibly, RedOne also failed to disclose to Ms. Germanotta and Defendant UMG Recordings, Inc. that he used an un-licensed sample in *Judas*. (Ex. F, LG01323 Sample Disclosure Sheet for *Judas*).  Though RedOne did admit that there was a sample in *Judas*.  (Ex. J, LG01340: RedOne: ████████████████████ ████████)

**RESPONSE:**

Object and move to strike the statement, "RedOne is also willing to make misleading statements regarding the production of songs to cover for Gaga's fear of being unoriginal" on the ground that it the statement is improper argument and irrelevant.  Objection on the ground that SAF ¶ 39 improperly states multiple facts.

Disputed that RedOne has "cover[ed] for Germanotta's fear of being unoriginal." ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

Further disputed that the sample used in *Judas* was "un-licensed." ████████████████

████████████████████████████████████████████████████████

██████████████████████████

40.     Defendant's expert Paul Geluso testified that reasonable minds could differ regarding the similarity between two musical works.  (Ex. X, Geluso Dep at 128:11 - 129:4).

**RESPONSE:**

Objection on the grounds that the deposition question was vague, called for speculation, and was an incomplete hypothetical.

Disputed to the extent SAF ¶ 40 misrepresents Geluso's testimony by omitting material portions. Geluso testified that, "in a hypothetical," and without reference to *Juda* or *Judas*, it may be reasonable that two people could disagree regarding musical similarities of two songs. RSOF Ex. X, Dkt. No. 146-25, Geluso Dep. at 128:18-129:4.

Dated: April 29, 2013

Respectfully Submitted,


*/s/Catherine J. Spector*                    */s/ Andrew H. Bart*
Charles B. Ortner *(admitted pro hac vice)*  Christopher B. Lay
Sandra A. Crawshaw-Sparks *(admitted pro hac vice)*  JENNER & BLOCK LLP
Alexander Kaplan *(admitted pro hac vice)*   353 N. Clark Street
PROSKAUER ROSE LLP                           Chicago, IL 60654
Eleven Times Square                          Tel:    (312) 840-7295
New York, NY 10036                           clay@jenner.com
Tel:    (212) 969-3000
cortner@proskauer.com
scrawshaw@proskauer.com                      Andrew H. Bart
akaplan@proskauer.com                        JENNER & BLOCK LLP
kblum@proskauer.com                          919 Third Avenue – 37th Floor
                                             New York, NY 10022-3908
                                             Tel:    (212) 891-1600
Steven R. Gilford                            abart@jenner.com
Catherine J. Spector                         ***Attorneys for UMG Recordings, Inc.***
PROSKAUER ROSE LLP
70 West Madison St., Suite 3800
Chicago, IL 60602
Tel:    (312) 962-3550
sgilford@proskauer.com
cspector@proskauer.com
***Attorneys for Stefani Joanne Germanotta***

/s/ Elvis D. Gonzalez
Elvis D. Gonzalez
ELVIS GONZALEZ, LTD.
Three First National Plaza
70 West Madison St., Suite 1515
Chicago, IL 60602
Tel:    (312) 558-9779
egonzalez@elvisgonzalezltd.com
**Attorney for DJ White Shadow, LLC**

/s/ Bryan E. Curry
John J. Bullaro, Jr.
Bryan E. Curry
BULLARO & CARTON PC
200 North LaSalle St., Suite 2420
Chicago, IL 60601
Tel:    (312) 831-1000
jbullaro@bullarocarton.com
bcurry@bullarocarton.com
**Attorneys for Brian Joseph Gaynor**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system on this 29th day of April, 2013.

/s/ Catherine J. Spector
Catherine J. Spector